## COMBUSTION FUEL OIL BURNER COMPANY v. MEMPHIS HEATING COMPANY.

Western Section. July 1, 1927.

Petition for Certiorari denied by Supreme Court, December 17, 1927.

1. **Contracts. Evidence. Evidence held not to show a breach of contract.**
Where the defendant and cross-complainants sought to recover from the complainant certain damages for breach of contract and wherein cross-complainant alleged misrepresentations on the part of the plaintiff and the evidence showed that all of defendants damages had been caused after plaintiff had notified defendant that the heaters in question were not duly approved, held that the evidence did not show any breach of contract on the part of the plaintiff, causing defendants damages.

2. **Pleading. Defendant held entitled to file a cross-bill.**
Where defendant asked leave to file a cross-bill asking for certain relief against a non-resident plaintiff because of a change in facts and circumstances since the commencement of the suit, held that defendant was entitled to leave to file same.

3. **Process. Service. Defendant filing a cross-bill against a non-resident complainant may serve process upon complainant's solicitors.**
It is well settled, especially in this state, that where in a suit by a non-resident, defendant files a cross-bill presenting matters not available in an answer, service of process thereon may be had on complainant's solicitor of record.

4. **Pleading. Cross-bill. Evidence held to justify a cross-bill.**
Where an action was brought against defendant to recover the purchase price of certain goods and thereafter goods in·excess of the amount sued for were returned to complainant, held that the excess could properly be recovered in a cross-bill.

5. **Trial. Where a cross-bill has been properly filed the defendant may recover thereon regardless of the amount and regardless of whether complainant proceeds with his bill or not.**
Where complainant sues a defendant, and the defendant files a cross-bill for a sum in excess of the amount sued for by the original complainant, a recovery may be had on the cross-bill if it is sustained by the evidence. And also where a complainant files a bill to enforce a demand or recover a judgment against a defendant, and a cross-bill setting up a counterclaim or demand, either by way of set off or recoupment, and the original bill is

dismissed, either on motion of complainant or by the court, the cross-complainant is entitled to proceed under his cross-bill, and if the facts warrant it, to recover under the cross-bill against the original complainant.

Appeal from Chancery Court, Shelby County; Hon. D. W. De-Haven, Chancellor.

Decree modified and cause remanded.

' M. C. Ketchum and H. H. Honnell, of Memphis, for appellant.

Yandell Haun and C. G. Dean, of Memphis, for appellee.

SENTER, J.   The complainant, Combustion Fuel Oil Company, as the manufacturer of the Combustion Fuel Oil Burners, entered into a written contract with the defendant Memphis Heating Company, dated May 29, 1924, referred to in the instrument as "Distributor's Sales Agreement," by the terms of which the defendant Memphis Heating Company became the distributor or dealer of the complainant for the sale of oil burners used in heating plants for the heating of buildings. The agreement was to continue for a period of one year.

The original bill alleges that the defendant is indebted to complainant in the sum of $1571.44 for goods, wares and merchandise sold and delivered to it according to the items set forth in the statement and invoices attached to and made a part of the bill, and seeks to recover of defendant for said amount. The statement in the bill covers several invoices for burners and heating equipment, etc., dated from September 25, 1924, to January 30, 1925.

The defendant answered the bill denying that it was indebted to the complainant in the sum alleged in the bill, or in any amount whatever. A cross-bill is incorporated in the answer, and in the cross-bill it is alleged that the cross-defendant, the complainant in the original bill, is indebted to it in the sum of $5,400.65, resulting from the alleged breach of the contract entered into between the parties. By the answer and cross-bill it is alleged that one of the principal inducements held out to the defendant in entering into said contract, was the representation made by the complainant that the said Combustion Fuel Oil Burners were approved by the Underwriters Laboratories; that this representation was made to the respondent by the complainant through its agents and officers during the negotiations, and also in the advertising matter which was shown to the respondent, the cross-complainant, and prior to the signing of the contract between the parties. It is further alleged in the answer and cross-bill that the defendant, cross-complainant, relying upon said representations with reference to said heating apparatus having been approved by the Underwriters Laboratories, proceeded to push the sales of said heating apparatus and procured orders for the installation

of the oil burners from its customers, and installed certain of the oil burners; that after a number of orders had been taken and some oil burners had been installed by it, competitors in Memphis discovered and made known the fact that said Combustion Oil Burners had not been approved by the Underwriters Laboratories, and upon investigation and through correspondence with complainant it was found that the approval of the Underwriters Laboratory for this particular type of oil burner had not been procured. It is further alleged in the answer and cross-bill that the insurance rate on the buildings where said oil burners had been installed by cross-complainant was raised, and that permits could not be procured from the authorities in Memphis for the installation of said oil burners because said type of oil burner was not listed among those approved by the Underwriters Laboratories, and that such of the burners as had been installed by cross-complainant were ordered taken out and those that had not been installed the orders were cancelled, resulting in the loss and damage to cross-complainant complained of in the cross-bill, and a recovery for which was sought in the cross-bill. The original complainant and cross-defendant, Combustion Fuel Oil Burner Company, answered the cross-bill of cross-complainant, and in which answer denies that it is indebted to cross-complainant as alleged in the cross-bill, or for any other sum. It is also denied in the answer to the cross-bill that cross-complainant was merely a distributor, and it is alleged that cross-complainant, while so designated in the contract, the relation between the parties to the controversy is governed by the contract entered into between the parties prior to any sale by cross-complainant or by any sale made by cross-defendant to cross-complainant.

The answer to the cross-bill further alleged that if there were ever any valid grounds for complaint against the products of cross-defendant sold to cross-complainant because the same had not been approved by the Underwriters Laboratories, this was fully corrected and the approval obtained before any of the items mentioned in the original bill were sold to cross-complainant, and that as to any of the items sold to cross-complainant by cross-defendant under said contract prior to the approval of the Underwriters Laboratories and the Tennessee Inspection Bureau, that, cross-complainant was fully advised as to the actual conditions and status, and well knew that said approval was in course of being obtained, and was fully cognizant of all the facts with reference to the same.

Subsequent to the filing of the answer to the cross-bill, cross-complainant presented its motion to be permitted to file an amended answer and cross-bill, which motion was overruled and disallowed by the Chancellor, and the Chancellor's action thereon was duly ex-

cepted to by cross-complainant. The proposed amended answer and cross-bill set out that since the filing of the answer to the cross-bill and by agreement with the complainant, the goods, wares and merchandise on hand with the defendant (cross-complainant), at the request of original complainant, had been shipped back to it; that the value of the merchandise so returned was $2,088.99, which cancelled the claim of original complainant of $1577.64, and left the original complainant indebted on that account in the sum of $511.35, and seeks by said proposed amended answer and cross-bill to recover said additional sum of $511.35 in addition to the alleged claim of $5,400.65. It appears from the record that the Chancellor based his action in refusing to permit the filing of said amendment to the answer and cross-bill on the ground that it was stated in open court by the solicitors representing complainant in the filing of the original bill that complainants whole demand set forth in said original bill had been fully satisfied by defendant.

At the hearing of the cause the Chancellor found and so decreed that all the matters involved in the original bill had been compromised and settled between the parties, and that the complainant, Combustion Fuel Oil Burner Company, had no other or further claim or demand against the defendant Memphis Heating Company. The Chancellor further decreed that the Memphis Heating Company, as the cross-complainant, under the facts as found by the Chancellor was not entitled to any relief against the cross-defendant, Combustion Fuel Oil Burner Company, and dismissed the cross-bill, and decreed a judgment against the Memphis Heating Company for the costs of the cause. To this decree of the Chancellor, the defendant and cross-complainant, Memphis Heating Company, excepted, and appealed to this court assigning numerous errors.

There is an elaborate finding of the facts as found by the Chancellor contained in the record, and certain additional finding of facts by the Chancellor on the petition of cross-complainant. We deem it unnecessary to set out in detail the facts as found by the Chancellor, but a summary of the same is sufficient to present the questions involved on this appeal.

The Chancellor found that early in the year 1924 the "Combustion Company" was a corporation organized under the laws of the State of Illinois, and domiciled in Chicago; that William T. Dean was the president of the Combustion Company, and was the patentee of, and his company manufactured and sold an oil burner, listed as standard, under the designation of "Type C," by the Underwriters Laboratories which is an agency of the National Board of Fire Underwriters. That "Type C" was a designation given to the product of the Combustion Company of Chicago by the

Underwriters Laboratories evidencing that it was approved by that agency as a heating appliance, and could be installed in buildings without violating any of the regulations of the National Board of Underwriters. That the complainant and cross-defendant, "Combustion Fuel Oil Burner Company," was a Wisconsin corporation domiciled at Milwaukee, and was formed in the early months of 1924, for the purpose of taking over. all the assets of the "Combustion Company" of Chicago, except its cash accounts, and continuing the manufacture and sale of the products of the latter company, including its "Type C" oil burner, which, as aforesaid, was listed as standard by the Underwriters Laboratory, and that said "Combustion Fuel Oil Burner Company," pursuant to the purpose of its organization, did take over the said assets of the Combustion Company, including the oil burners, and did continue to manufacture and sell the same under the standard listing aforesaid as it was authorized to do under its contract of purchase with the Combustion Company of Chicago. That Wm. T. Dean, who had been president of the Combustion Company of Chicago, and the patentee of the "Type C" oil burner manufactured and sold by that company, went into the organization of the Combustion Fuel Oil Burner Company, and became its vice-president. On the 29th day of May, 1924, subsequent to the transfer by the Combustion Company to the Combustion Fuel Oil Co., of its assets, including the right to manufacture the "Type C" burner, made and entered into the contract with the Memphis Heating Company through its president, J. H. Mahorney, whereby the latter company was to handle the products of the former in the Memphis territory, including certain counties in West Tennessee, Mississippi and Arkansas. That all of the terms and provisions on the face of said contract were carried out and discharged by the Combustion Fuel Oil Burner Company, and there was no provision contained in the contract made the subject of attack by the cross-bill or otherwise. That sometime later, the date not appearing from the record, the Underwriters Laboratories, learning that the Combustion Company of Chicago had sold out to the Combustion Fuel Burner Company and had discontinued the manufacture of the products theretofore manufactured by it, including the said "Type C" burner, wrote the Combustion Fuel Oil Burner Company on April 25, 1924, that in order to avoid any misunderstanding, it had requested that their card, which was in the nature of a certificate showing the standardization of the burner, be temporarily withheld. The purpose of this, as shown by the proof, was to enable the Underwriters Laboratories to ascertain if the burner as manufactured and sold by the Combustion Fuel Oil Burner Company was the same as that manufactured and sold as standard by the Combustion Company

as its "Type C." That in a letter of the Underwriters Laboratories dated April 26, 1924, being the same letter above referred to, the Combustion Fuel Oil Burner Company was requested to ship to the Underwriters Laboratories a complete equipment with installation and operation instructions exactly as would be furnished to a customer. That on May 9, 1924, the Underwriters Laboratories wrote the Combustion Fuel Oil Burner Company, stating that it had received the sample and also three motors for use in the assembly. On August 12, 1924, Mr. Mahorney, president of the Memphis Heating Co., wrote to the Combustion Fuel Oil Burner Company that he had just been advised that the Underwriters Laboratories had not approved the burner as manufactured and sold by the Combustion Fuel Oil Company. This letter was followed by another on August 13, 1924, further referring to the fact that the "Type C" burner, as sold by the Combustion Fuel Oil Burner Company, was temporarily off the approved list of such appliances. Up to the time that the Memphis Heating Company was advised of the fact above stated it had ordered out only one burner, and that was the one to be installed in its place of business at Memphis for demonstration purposes. Subsequent to obtaining this information the Memphis Heating Company ordered all of the burners, in the handling of which it claimed it had suffered loss and damage. It is not insisted that any of its loss and damage was occasioned by reason of any mechanical defects or improper construction, or any element of unsuitability for the purposes for which the burner was manufactured or sold, but that because the burner was not on the list of such appliances listed as "Standard" by the Underwriters Laboratories, the Insurance Underwriters refused to permit them to be installed in buildings covered by their policies without an increase in the rate. It was insisted by the Memphis Heating Company that because of this ruling by the Underwriters those to whom it had sold and for whom it had installed the burners required them to be removed and that its loss was occasioned by having incurred the expense of selling and installing and in taking out and removing the burners so installed, except one which was sold in the State of Mississippi, and to which the Underwriters objection did not apply. All of the burners for these different jobs were either ordered or received, and they were all installed by the Memphis Heating Company, after it had been advised that the burner was not on the approved listings of the Underwriters Laboratories, and when it had full knowledge that if they were installed in the absence of the approval of the Underwriters the installation and use would be contrary to the rules and regulations governing in such cases.

We fully concur in the above finding of facts as found by the Chancellor, and we are of the opinion that the above facts as found by the Chancellor are shown by a preponderance of the evidence in the record. The Chancellor further found as a fact that the removal of the "Type C" burner from the approved list was a temporary removal only, and thereafter the Combustion Fuel Oil Burner Company was in no way at fault. That the proof showed that it exercised every diligence that could be required of it to meet the demands of the Underwriters Laboratories; that it had no control over that body; that in nothing was it guilty of any bad faith, but in everything evidenced good faith and diligence. In view of the evidence in the record to the effect that the "Type C" burner was in all essential respects the same as "Type D," with certain slight, but immaterial changes or alterations, and designated as "Type D," and in view of the further fact that the change in the name of "Type C" to "Type D" was not made for any improper or evasive purpose, we must concur in the conclusion reached by the Chancellor that the removal of this type of burner from the approved list was only temporary, and until the Underwriters Laboratories could, by investigation, determine that it was to all practical ends the same burner as "Type C," and when this had been favorably determined, this type of burner was restored to the approved list of burners by the Underwriters Laboratory. We must also concur in the conclusion reached by the Chancellor that if the alleged losses were in fact suffered or sustained alone by reason of the fact that the "Type C" burner was not on the approved list of the Underwriters at and during the period of time the loss is alleged to have been sustained, were for expenses and outlays of money paid out by the Memphis Heating Company, not in ignorance of any fact, but with full knowledge of every fact of which it now complains as a factor contributing to its loss. We think it clear from the evidence that the Memphis Heating Company was perfectly familiar with the whole situation, and that the orders taken and installations made were with full knowledge that because the name or type of the burner had been changed from "Type C" to "Type D," with minor mechanical changes, it had been removed from the list of approved burners pending the investigation by the Underwriters Laboratories. Not only does it appear from the record that the Memphis Heating Company continued to solicit orders and make installations of this equipment with full knowledge that the approval of the Underwriters Laboratories was pending, but we find that the principal complaint of the Memphis Heating Company is predicated upon the equipment sold by it to a Mr. Dermon, who it appears was connected with a rival burner company, but who it seemed had ordered this

·burner installed by the Memphis Heating Company for an apartment house, and after discovering that it was not among the burners having the approval of the Underwriters Laboratories, ordered it taken out. In a letter written by the Memphis Heating Company of date November 17, 1924, with reference to this particular burner installed for Mr. Dermon, he states that Mr. Dermon "really had no kick coming," and his real reason for ordering it out was because his business associates, "got very sore when he bought a burner from us for his four buildings." It appears that the principal objection that Dermon had to the burner was that it consumed more fuel than had been represented to him it would consume, and his complaint, like the complaint of most others who had ordered the burners installed, was principally upon the ground of the excessive cost of operation. Another significant fact to be noticed is that on August 20, 1924, Mr. Mahorney, president of the Memphis Heating Company, in a letter to the oil burner company with reference to the matter of procuring permits for the installation of the burners pending a final approval by the Underwriters Laboratories, disclosed his full knowledge of the whole situation, and a paragraph in the letter shows that notwithstanding he knew that the approval had not yet been obtained he was successfully deceiving the authorities in Memphis. We quote from his letter of August 20, 1924, as follows:

"We did put one over the other day and got away with two permits, but they questioned us as to whether the burner was allowed to be installed. The official in charge read the card you sent us but he did·not know any of the other parts of the game that was being played in regard to the manufacturers name. When do you think you can get the headquarters to decide definitely in favor of your burner?"

This paragraph in the letter, contained in the record as Exhibit 34, is a clear indication that the president of the Memphis Heating Company, with full knowledge of the situation, was continuing to install this equipment, and in doing so was willfully deceiving the authorities in order to procure permits for the installation. The most charitable view to take of this conduct would be to say that he knew that the type of burner being installed under the designation of "Type C" was in all essential respects the same as the burner he was installing under the designation of "Type D" and that "Type C" had been approved by the Underwriters Laboratories and the Underwriters Rating Board as standard equipment, and that the "Type D" would soon be approved by the insurance agencies, and hence no real injustice would be done to customers. But if this charitable view be taken, the fact remains, that he continued selling the equipment and installing the same

with full knowledge, and we think at his own risk and hazard. Any loss resulting to him had therefore been fully assumed by him.

Without reviewing the assignments of error in detail, we are of the opinion that the Chancellor reached the correct conclusion, and there was no error in his action in dismissing the cross-bill, and in taxing the costs of the cause to the Memphis Heating Company, since all the litigation, after the return of the goods which cancelled complainant's debt, was occasioned by the claim of cross-complainant under the allegations in the cross-bill.

There remains one other question to be considered and disposed of. This is raised by the twelfth assignment of error, which is as follows: "The court erred in declining to permit appellant to file its amended cross-bill and denying its motion for an order for process on the same to be served upon appellee's solicitors."

The amended cross-bill which cross-complainant asked to be permitted to file and have process issued and served on solicitors of original complainant, after a brief review of the claim made in the cross-bill filed seeking a recover of $5400.65, set out in substance that since the filing of the answer and cross-bill in the cause, by agreement with complainant, the goods, wares and merchandise on hand with defendant for the value of which the original bill was filed in the cause, had, at the written request of complainant been shipped back to it; that the value of the goods returned, and for which the defendant was entitled to credit, is $2,088.99, and which credit cancels complainant's claim of $1577.64, against the defendant in full, and leaves complainant indebted to defendant in the sum of $511.35, as shown by an itemized statement attached as Exhibit 2. That said $511.35 is due to defendant in addition to the amount of $5400.65, sued for in the original cross-bill, making a total amount due defendant and cross-complainant by complainant and cross-defendant of $5912, and prays that at the hearing cross-complainant have a decree against the complainant and cross-defendant for the said additional sum of $511.35, in addition to the sum of $5400.65 sued for in the cross-bill originally filed; and prays that service of process be had upon the solicitors of record of complainant, the complainant being a nonresident and having no office in the State of Tennessee, etc.

In overruling the motion for the filing of this amended answer and cross-bill, the court order recites:

"And the court after hearing argument and considering the same, overruled the motion for an order for service of process upon the solicitors of record for complainant for the reason that the whole amount sued for in complainant's original bill had been fully satisfied by defendant."

5 T. A.—39.

'We are of the opinion that the learned Chancellor was in error in refusing to permit the filing of this amended cross-bill, and ordering service of process on the solicitors of record of original complainant. The original bill was still pending, and an answer and a cross-bill had been filed by defendant. This new demand or claim of defendant against complainant arose during the pendency of the suit, and was a matter growing out of the transactions involved in the suit. If the averments in the petition were true,. the defendant at the request and by agreement had returned or shipped back to complainant merchandise in excess of complainant's claim, and for which complainant would be liable in a separate suit brought by the defendant for the amount in excess of complainant's claim.

We think it is well settled, especially in this State, that where, in a suit by a nonresident, defendant files a cross-bill presenting matters not available in an answer, service of process thereon may be had on complainant's solicitor of record. Essenkay Company v. Essenkay Sales Company et al., 132 Tenn.; 287 (citing numerous cases from this and other States). In the case of Essenkay Co. v. Essenkay Sales Company, supra, in the second headnote it is stated: "A defendant, filing a cross-bill against a nonresident complainant, is entitled to an order for service of process on complainant's solicitor of record, though in making application defendant erroneously relies on Acts 1887, chapter 226, inapplicable to the case."

In the same case it is held that the court refusing to make an order for service of process on a nonresident complainant upon defendant filing the cross-bill, may not proceed to dispose of the matters involved in the cross-bill setting forth matters which could not properly appear in an answer, citing with approval the case of Moore v. Tilman, 106 Tenn., 361.

If, therefore, cross-complainant was otherwise entitled to file the amended cross-bill, the Chancellor was in error in denying the order requested by appellant for service of process on the solicitor's of record of the nonresident complainant. We are also of the opinion that the contention made by appellee in replying to the twelfth assignment of error of appellant, to the effect that appellee shipped back to complainant merchandise in excess of the amount of the claim was unauthorized, cannot be considered on the question of the right to file the proposed amendment to the cross-bill, because it appears from said proposed amended cross-bill that the goods and the merchandise were shipped back at the request of complainant and by agreement with complainant pending the litigation between the parties in this cause, and nothing in the record as presented by the proposed amended cross-bill

discloses that the amount of merchandise of value in excess of complainant's demand shipped back by appellee was unauthorized or not accepted by appellant when so shipped back. This would have been a proper matter for defense to the amended cross-bill had appellee been permitted to file the same, or at least the subject of proof to determine that issue.

The rule on the question of the right to present a counterclaim by way of cross-bill under the circumstances as presented by this record is well stated in 2 Street Federal Equity, paragraph 1228: "A suit is said to be dependent on another, or ancilliary to it, when such suit or proceeding is so intimately connected with the other as to constitute an integral part or a mere continuation of it."

We also think it well settled as a rule of practice in this State, that where complainant sues a defendant, and the defendant files a cross-bill for a sum in excess of the amount sued for by the original complainant, recovery may be had on the cross-bill if it is sustained by the evidence. And also where a complainant files a bill to enforce a demand or recover a judgment against a defendant, and a cross-bill setting up a counterclaim or demand, either by way of set-off or recoupment, and the original bill is dismissed, either on motion of complainant or by the court, the cross-complainant is entitled to proceed under his cross-bill, and if the facts warrant it, to recover under the cross-bill against the original complainant.

In the case of Carroll v. Taylor, 102 Tenn., 451, 52 S. W., 139, it is held:

"While granting to the full extent the auxiliary nature of a cross-bill, yet so far independent that the complainant in the original bill failing altogether in maintaining it, the cross-complainant may press his claim in his pleading to a decree, and thus obtain full relief upon it, exactly as if it was an original bill. . . ."

In Cocke v. Trotter, 10 Yerg., 212, it is said:

"Under the decisions of the Supreme Court of this State the original and cross-bill are treated as forming but one suit, the latter becoming as it were incorporated with the former."

In the view we have taken of the questions presented on this appeal, the cause will be remanded to the chancery court of Shelby county, to the end that the proposed amendment to the cross-bill, or amended cross-bill, setting up the claim for the value of merchandise shipped back by cross-complainant to cross-defendant in excess of the amount of the claim of cross-defendant as set forth and alleged in the original bill, be filed, and process thereon ordered issued by the Chancellor and served on the solicitors of record of original complainant, and that in all other

particulars the decree of the Chancellor denying the relief sought under the original cross-bill, and denying a recovery under said original cross-bill for alleged losses and damages sustained by reason of the alleged breach of the contract between the parties is affirmed. The cost incident to this appeal will be paid one-half by appellee, the original complainant and surety on the cost bond, and one-half by appellant and surety on the appeal bond.

Owen and Heiskell, JJ., concur.